MFA MUTUAL INS. CO. v. FLOYD BRADSHAW, ET UX

5-4640                                              431 S.W. 2d 252

Opinion Delivered September 9, 1968

*Wright, Lindsey & Jennings* for appellant.

*George J. Cambiano* for appellee.

JOHN A. FOGLEMAN, Justice.    Appellant contends that the trial court erred in overruling its motion to dismiss an amended complaint filed against it by each of the appellees and granting the motions of appellees for a summary judgment.

Appellees, Floyd and Ethel Bradshaw, brought separate suits against appellant, MFA Mutual Insurance Company, on March 14, 1967 seeking recovery on judgments each had recovered against one Brenda

Howard, an uninsured motorist. These judgments were for damages resulting from an automobile collision between a vehicle owned and operated by Floyd Bradshaw, in which Ethel Bradshaw was a passenger, and a vehicle operated by this uninsured motorist on September 17, 1966. The suits were consolidated for trial. Appellant was appellees' liability insurance carrier. The liability policy provided uninsured motorist coverage. Each appellee was an "insured" under the policy terms. The coverage was set out as follows:

> "* * * The Company will pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; * * *."

Appellees instituted suit against appellant and Brenda Howard on October 11, 1966. Brenda Howard employed counsel and filed an answer and counterclaim. MFA filed a motion asking dismissal of the complaint as to it on the ground that appellees had improperly joined an action in tort against Brenda Howard and an action in contract against MFA. The trial court required appellees to elect which remedy they would pursue.[1] They took a voluntary nonsuit against MFA and elected to proceed against Howard on February 17, 1967. On February 20, 1967, appellant, by its attorney, wrote a letter to appellees' attorney directing attention to the following language in Insuring Agreement V:

> "No judgment against any person or organization alleged to be legally responsible for the bodily injury (sustained by the insured) shall be conclusive, as between the insured and the Company, of the issues of liability of such person or organiza-

---

[1] This occurred before the effective date of Act 73 of 1967 permitting joinder of an action in tort with an action in contract.

tion or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the Company."

In this letter appellees' attorney was also advised that MFA Mutual Insurance Company did not consent, in writing or otherwise, to the prosecution of the action against Brenda Howard, and that any judgment obtained against her would not be conclusive as to the liability of Brenda Howard or the amount of damages appellees might be legally entitled to recover from MFA. No reason for the withholding of consent was stated.

On March 14, 1967 the complaint against MFA was dismissed without prejudice pursuant to the nonsuit indicated previously. On the following day, when the case against Brenda Howard was called for trial, neither she nor her attorney appeared, and the default judgment sued on here was entered in favor of both Bradshaws on their complaint and against Brenda Howard on her counterclaim. No explanation of the reason for her failure to appear has been given. MFA filed a motion to dismiss the cause now before us based upon the letter mentioned above and the policy clause quoted therein, stating that it was entitled to litigate the issues of liability and damages, and alleging that the default judgments were not binding on it. The trial court treated the motion to dismiss as a demurrer and gave appellees time within which to amend their respective complaints. Both amended to add an allegation that MFA had refused to settle with them and refused to defend the suit against Brenda Howard after having had notice of the suit and after having been notified of the trial date, and that the doctrine of res judicata applied. MFA again moved for dismissal, reiterating the statements of its original motions, and alleging that it could not have defended the action against Brenda Howard, that res judicata was inapplicable because of a lack of identity of parties, and that the sole remedy

of the Bradshaws was by an action against MFA in which the issues of the liability of Brenda Howard and the amount of damages would be litigated. This motion was denied. The Bradshaws then filed a motion for summary judgment based upon the pleadings and a stipulation of the facts herein above stated. This motion was granted and this appeal taken.

The sole question on this appeal is that of the validity of the paragraph providing that no judgment in an action prosecuted by the insured against an uninsured motorist without the written consent of the insurer shall be conclusive as between the insured and the insurer. The meaning and intent of this provision is clear and unmistakable. It is designed to protect the insurer in cases such as this where, even though there was every reason to believe that the questions of liability and damages would be litigated thoroughly, the uninsured motorist defaulted. As a result, the question of liability has not actually been litigated. We agree with the Supreme Court of Missouri that defaulting defendants are not represented because a trial court cannot and should not act as an attorney for defaulting defendants and produce witnesses who might contradict the testimony of a plaintiff and witnesses produced by him. *State v. Craig,* 364 S.W. 2d 343, 95 ALR 2d 1321 (Mo. 1963). This question can never be litigated unless this policy provision is held valid, or unless we hold that such a judgment cannot be conclusive on the insurer. Such a holding would be contrary to the apparent weight of authority. See, *e.g., Boughton* v. *Farmers Ins. Exchange,* 354 P. 2d 1085, 79 ALR 2d 1245 (Okla. 1960); *MFA Mutual Ins. Co. v. Lovins,* 248 F. Supp. 108 (D.C. Ark. 1965), and authorities cited therein.

An insurer may contract with its insured upon conditions expressed in its policy, limited only by statute and public policy. The insured, by acceptance of a policy, is deemed to have approved it with all conditions

and limitations expressed therein which are reasonable and not contrary to public policy. *Maryland Casualty Co.* v. *Chew*, 92 Ark. 276, 122 S.W. 642.

Certain clauses have been voided as contrary to public policy. Ark. Stat. Ann. § 66-3233 (Repl. 1966) declares that a clause compelling an insured to submit any question of fact to arbitration is void. We agree with the United States District Court for the Eastern District of Arkansas that a clause providing forfeiture of insurance coverage by an insured who prosecuted to judgment a suit against an uninsured motorist without written consent of the insurer is against public policy of the state. *MFA Mutual Ins. Co.* v. *Lovins*, 248 F. Supp. 108 (D.C. Ark. 1965). That case, relied upon by appellees, is easily distinguished from the case at bar. No penalty of entire loss of coverage is provided for in the policy involved here. The contract here simply permits the insured to have the opportunity to litigate separately questions of liability of the uninsured motorist and the damages recoverable, unless it consents to an action by its insured against the uninsured motorist. Under this clause, the insured can pursue remedies against either or both the uninsured motorist and the insurer, but he cannot hold the insurer, without its consent, upon a judgment obtained in an action in which the insurer was not a party and consequently had no control over the defense made or evidence offered.

In many of the decisions cited in this opinion there is a holding that an insurer having notice of or an opportunity to participate in an action against an uninsured motorist is, or may be, bound by the judgment rendered in favor of its insured, but none of them involve a contract containing a clause stipulating against such a binding effect but not imposing forfeiture of coverage. We are not aware of any decision in which the insurer's liability on such a judgment is based on the doctrine of res judicata. Most seem to be based

on some kind of estoppel. There is no statute prohibiting this clause in a motor vehicle liability insurance policy. In at least one court it has been recognized that a judgment against an uninsured motorist may not be binding on the insurer where there is a policy clause like this one. *Andeen* v. *Country Mutual Ins. Co.,* 70 Ill. App. 2d 357, 217 N.E. 2d 814 (1966). See, also, *Alston* v. *Amalgamated Mutual Cas. Co.,* 53 Misc. 2d 390, 278 NYS 2d 906 (1967). We are not aware of any public policy of this state which would invalidate it. On the other hand, there are many policy considerations which indicate that such a provision is reasonable. The insured would be free to pursue his remedy against an insurance company which might be the only real party in interest as a defendant. It is desirable that uninsured motorist coverage be available at the option of the insured at a modest premium. [See *Kisling* v. *MFA Mutual Ins. Co.,* 399 S.W. 2d 245 (C.A. Mo. 1966).] The insurer would not be required to pay damages in cases in which, because of default, the questions of liability and damages were never really litigated. The effect of the duplicitous position of an insurer who would be liable on a judgment against its insured, but who would also be required to pay any judgment rendered in favor of its insured against an uninsured motorist not selected or approved by it, could be minimized to some extent. At least the insurer would have some control over situations in which it was called upon to defend its insured on a counterclaim, while it would be to its own interest that the parties would eventually be found equally responsible for the damages, or, if not, that the amounts of recovery would be offsetting. Any state of affairs in which an insurer would desire to minimize its insured's recovery against another party may not be against public policy, but is undesirable to say the least. The possibility of collusion between an insured and an uninsured motorist is minimized by such a clause.

We agree with the Oklahoma Supreme Court that a situation where the interest of an insurer is to defeat the claim of its own insured should not be countenanced

where it can be avoided. *Holt* v. *Bell*, 392 P. 2d 361 (Okla. 1964). That court stated that placing the parties in such a position virtually makes the plaintiff's insurer the liability insurer of the defendant and interested in defeating the claim. The uninsured motorist provision is not intended to afford coverage to the uninsured motorist, but to provide protection to the insured against the perils of injury by an uninsured motorist. Ark. Stat. Ann. § 66-4003 (Repl. 1966); *Johnson* v. *General Motors Corp.*, 242 F. Supp. 778 (D.C. Va. 1965), and cases cited therein. Appellees contend that appellant should have tendered a defense to the uninsured motorist. The insurer has no duty to defend an uninsured motorist. *Kisling* v. *MFA Mutual Ins. Co.*, 399 S.W. 2d 245 (C.A. Mo. 1966). It is at least doubtful that the insurer has any right to do so. In case an insurer elected to defend, its ability to control the defense would be very restricted in a case like this one. The propriety of tendering a defense to one who has employed his own counsel is questionable.

Our statute provides that the insurer be subrogated to the rights of its insured against the uninsured motorist. Ark. Stat. Ann. §66-4006 (Repl. 1966). It has been recognized that this right could be materially impaired unless the insurer had some option about the conduct of an action against the uninsured motorist. *Mills* v. *Farmers Insurance Exchange*, 41 Cal. Rptr. 650 (1964); *Alston* v. *Amalgamated Mutual Cas. Co.*, 53 Misc. 2d 390, 278 NYS 2d 906.

The clause in question does not prohibit an insured from prosecuting an action against the uninsured motorist, so it cannot be said that it hampers an insured in seeking to recover damages in excess of his policy limits from a solvent uninsured motorist.

Inferentially, it is suggested that appellant withheld its consent arbitrarily. While there well may be an implied promise on the part of the insurer that its

consent not be withheld arbitrarily (see *Levy* v. *American Automobile Inc. Co.*, 31 Ill. App. 2d 157, 175 N.E. 2d 607), the burden was on appellees to show that this was done. *Portillo* v. *Farmers Ins. Exchange*, 238 Cal. App. 2d 58, 47 Cal. Rptr. 450 (1966). Under the circumstances of the case at bar, we cannot say that there is any such showing.

We find the "consent" clause in this policy to be valid and binding. The summary judgment is reversed and the cause remanded for proceedings consistent with this opinion.